UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
Lorene Clark, Shaney Clark, Reginald
Jackson and Earl Washington,

,

                          Plaintiffs,

      -against-


The City of New York, Detective John
Gamble (Shield No. 2822), Detective
Darnay Harris (Shield No. 6193), Detective
Jeanbern Remy (Shield No. 12574),
Detective Andrew Prendergast
(Shield No. 6395), Detective Kirk
Fernandes (Shield No. 2531), Detective
James Rivera (Shield No. 5027), Detective
Ian Cyrus (Shield No. 2768), Detective
James Ellerbe (Shield No. 29098),
Captain Gregory Stewart (Shield No. 12574)
and Sergeant John Costin (Tax Reg. No.
903693),
                          Defendants.
----------------------------------------------------x

12 Civ. 243 (SLT)(RLM)



AMENDED COMPLAINT

JURY DEMAND

Plaintiffs Lorene Clark, Shaney Clark, Reginald Jackson and Earl Washington
(hereinafter "plaintiffs"), by their attorney(s), The Law Offices of Wale Mosaku, P.C.,
complaining of the defendants, The City of New York, Detective John Gamble (Shield
No. 2822), Detective Darnay Harris (Shield No. 6193), Detective Jeanbern Remy (Shield
No. 12574), Detective Andrew Prendergast (Shield No. 6395), Detective Kirk Fernandes
(Shield No. 2531), Detective James Rivera (Shield No. 5027), Detective Ian Cyrus
(Shield No. 2768), Detective James Ellerbe (Shield No. 29098), Captain Gregory Stewart
(Shield No. 12574) and Sergeant John Costin (Tax Reg. No. 903693) (collectively
referred to as the Defendants), upon information and belief, alleges as follows:

                    <u>NATURE OF THE ACTION</u>

1.          This is an action at law to redress the deprivation of rights secured to
            each plaintiff under color of statute, ordinance, regulation, custom,
            and/or to redress the deprivation of rights, privileges, and immunities

secured to each plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §§ 1982, 1983 and 1985, [and arising under the laws and statutes of the State of New York].

JURISDICTION

2.      The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to each plaintiff by the Fourteenth Amendment to the Constitution of the United States.  Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3.      All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear State and/or City law causes of action. The events, parties, transactions, and injuries that form the basis of each plaintiff's federal claims are identical to the events, parties, transactions, and injuries that form the basis of each plaintiff's claims under applicable State and City laws.

4.      As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

SATISFACTION OF THE PROCEDURAL PREREQUISITES FOR SUIT

5.      All conditions precedent to the filing of this action have been complied with. On July 27, 2011, within ninety days after the claim(s) alleged in this complaint arose, written notice(s) of claim, sworn to by a representative of each plaintiff, were served upon the defendant City of New York, by personal delivery of the notice in duplicate, to the person designated by law as one to whom a

summons issued against such party may be delivered in an action in the applicable Courts. Plaintiff Lorene Clark's claim was assigned the Claim No. 2011PI027583. Plaintiff Shaney Clark's claim was assigned the Claim No. 2011PI027644. Plaintiff Reginald Jackson's claim was assigned the Claim No. 2011PI027642. Plaintiff Earl Washington's claim was assigned the Claim No. 2011PI027640.

6.     At least thirty days have elapsed since the service of the above-mentioned notice(s) of claim, and adjustment or payment of the claims have been neglected and/or refused.

7.     This action, pursuant to New York State and City Law, has been commenced within one year after the happening of the event upon which the claim is based.

### THE PARTIES

8.     During all times material to this complaint, the plaintiffs were, and still are, residents of the City and State of New York, each presently residing in Kings County.

9.     At all relevant times, defendants Detective John Gamble (Shield No. 2822), Detective Darnay Harris (Shield No. 6193), Detective Jeanbern Remy (Shield No. 12574), Detective Andrew Prendergast (Shield No. 6395), Detective Kirk Fernandes (Shield No. 2531), Detective James Rivera (Shield No. 5027), Detective Ian Cyrus (Shield No. 2768), Detective James Ellerbe (Shield No. 29098), Captain Gregory Stewart (Shield No. 12574) and Sergeant John Costin (Tax Reg. No. 903693) (collectively referred to as "defendant officer(s)"), upon information and belief, were and still are, law enforcement officers in the employ of the Police Department of the City of New York.

10.    At all times herein, the defendant officers were employed as law enforcement officers of the City of New York, State of New York, and were acting under the color of their official capacity, and their acts were performed under color of the statutes and ordinances of the

City of New York and/or the State of New York. The defendant
officers were the servants, agents, and employees of their co-
defendant, the City of New York, so that their acts are imputed to the
City of New York and its Police Department.

11. At all relevant times, the defendant City of New York was/is a
municipal corporation of the State of New York, and was/is the
employer of the defendant Officers, through its Police Department,
namely New York City Police Department and the actions of the
defendant officers complained of herein were done as part of the
custom, practice, usage, regulation and/or direction of the City of
New York.

12. Each plaintiff sues all defendants in their individual and official
capacities.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

13. On or about July 13, 2011, at approximately 06:00 a.m., within the
premises described as 654 Kingsborough 6 Walk, #6C, Brooklyn,
New York 11233 (hereinafter "subject premises"), the plaintiffs
Lorene Clark, Shaney Clark and Reginald Jackson were arrested by
the defendant police officers.

14. At the above-referenced place and time the plaintiff Lorene Clark,
who resides at the subject premises, was woken from sleep when she
heard loud banging at the front door of the subject premises.

15. Startled out her sleep, the plaintiff Lorene Clark went to the front
door (which is adjacent to her bedroom door), and asked who was
banging at her door. There was no response, and the banging
continued for approximately five (5) minutes.

16. At the above-referenced place and time the plaintiff Shaney Clark,
who resided at the subject premises (but at the time was visiting
during a college recess), was also woken from sleep due to the loud
banging upon the front door, and came out the room she was in,

where she observed the plaintiff Lorene Clark at the front door, inquiring as to the reasons for the banging on the front door.

17. The plaintiff Reginald Jackson, who resides at the subject premises, was also woken from sleep due to the loud banging upon the front door. The plaintiff Reginald Jackson came out the room he was in, where he observed the plaintiff Lorene Clark at the front door, inquiring as to the reasons for the banging on the front door.

18. After approximately five (5) minutes, all or some of the defendant police officers gained entry into the subject premises, having forcibly broken down the front door of the subject premises.

19. The first defendant officer who entered into the apartment was wearing a facemask, and also had a shield. Without saying a word, said defendant officer immediately rushed at the plaintiff Lorene Clark, and hit the plaintiff Lorene Clark in the face with the shield, whereupon she fell back onto the bed within her bedroom. The plaintiff Lorene Clark, who was seventy five years old at that time, suffered bruising to her face and head as a result of the unwarranted and unprovoked attack and assault by said defendant officer.

20. The plaintiff Lorene Clark was immediately hand-cuffed following the above-referenced assault and battery.

21. The first defendant officer who entered into the apartment then proceeded to rush at the plaintiff Shaney Clark and hit her with the same shield he had hit the plaintiff Lorene Clark with, whereupon the plaintiff Shaney Clark fell back against a scooter. Another defendant officer then dropped onto of the plaintiff Shaney Clark. The plaintiff Shaney Clark sustained injuries to her head, body and limbs as a result of the above-referenced defendant officers' unwarranted and unprovoked violent actions.

22. The plaintiff Shaney Clark was then dragged to the kitchen of the subject premises and immediately hand-cuffed.

23.     The plaintiff Reginald Jackson was immediately hand-cuffed without incident.

24.     At the time of the above-referenced entry to the subject premises by the defendant police officers, a thirteen (13) year old minor and a six (6) year old minor were also within the subject premises.

25.     The defendant police officers then proceeded to search the subject premises.

26.     Nothing illegal was found within the subject premises following the search by the defendant police officers.

27.     A dog was then brought and/or caused to be brought into the subject premises by the defendant police officers, presumably to search for illegal narcotics.

28.     Nothing illegal was found within the subject premises following the search by the dog that was brought and/or caused to be brought into said premises by the defendant police officers.

29.     Nevertheless, at approximately 07:00 a.m., the plaintiffs Lorene Clark, Shaney Clark and Reginald Jackson were taken out of the subject premises by the defendant police officers, and placed in a police vehicle, following which they were driven around by some of the defendant police officers until approximately 11:00 a.m., whereupon they were taken to the 77th precinct.

30.     Upon arrival at the 77th precinct, the plaintiffs Lorene Clark, Shaney Clark and Reginald Jackson were each placed in a cell, following which they were "processed", or otherwise fingerprinted and photographed.

31.     At approximately 11:00 p.m. on July 13, 2011, the plaintiffs Lorene Clark, Shaney Clark and Reginald Jackson were taken to "Central Booking", located within the criminal courthouse building at 120 Schermerhorn Street, Brooklyn, New York 11201.

32.     The plaintiffs Lorene Clark, Shaney Clark and Reginald Jackson were further "processed" at Central Booking.

33.      At approximately 03:00 a.m. on July 14, 2011, the plaintiffs Lorene
         Clark, Shaney Clark and Reginald Jackson were each released from
         Central Booking, without being arraigned before a Criminal Court
         Judge. Upon information and well founded belief, the Kings County
         District Attorney had declined to prosecute them.

34.      The plaintiff Lorene Clark's arrest # was "K11667811". The plaintiff
         Shaney Clark's arrest # was " K11667817". The plaintiff Reginald
         Jackson's arrest # was " K11667822".

35.      On or about July 13, 2011, at approximately 07:00 p.m., within the
         confines of the 77th Police Precinct (hereinafter "precinct"), the
         plaintiff Earl Washington was arrested by the defendant officers.

36.      The plaintiff Earl Washington had reported to the precinct after being
         informed that he was wanted by officers of the New York City Police
         Department, following the above-referenced search of the subject
         premises.

37.      Indeed, during the above-referenced search, one of the defendant
         officers had called the plaintiff Earl Washington and informed him
         that illegal narcotics had been found within the subject premises.

38.      The defendant officer who spoke with the plaintiff Earl Washington
         informed him that if he did not turn himself in, his grandmother
         Lorene Clark, aunt Shaney Clark and uncle Reginald Jackson would
         be arrested and imprisoned.

39.      As a result of the above-referenced threats, on July 13, 2011, at
         approximately 07:00 p.m., the plaintiff Earl Washington reported to
         the 77th precinct in the company of his mother, namely Patricia
         Washington.

40.      The plaintiff Earl Washington was immediately placed in handcuffs
         by some defendant officers, and detained within a cell.

41.      After spending approximately one (1) hour within the cell, the
         plaintiff Earl Washington was taken out of the cell, to an
         interrogation room. Within the interrogation room, some of the

defendant officers asked the plaintiff Earl Washington why he had turned himself in. The plaintiff Earl Washington responded that he had been told that if he did not, his family would remain imprisoned.

42.     At that juncture, the plaintiff Earl Washington asked to speak with a lawyer. The defendant officers who were questioning the plaintiff Earl Washington asked the plaintiff Earl Washington if he was sure he wanted to do that. The plaintiff Earl Washington was told by the defendant officers who were questioning him that anything he told them would "help" his "case".

43.     When the plaintiff Earl Washington continued to insist on speaking with a lawyer, the defendant officers who were questioning him then ceased to do so, and the plaintiff Earl Washington was placed back in a cell, following which he was "processed", or otherwise fingerprinted and photographed.

44.     At approximately 02:00 a.m. on July 14, 2011, the plaintiff Earl Washington was taken to Central Booking.

45.     Upon arrival at Central Booking, the plaintiff Earl Washington was further "processed".

46.     At approximately 05:30 a.m. on July 14, 2011, the plaintiff Earl Washington was released from Central Booking without being arraigned before a Criminal Court Judge. Upon information and well founded belief, the Kings County District Attorney had declined to prosecute him.

47.     The plaintiff Earl Washington's arrest # was "K11667980".

48.     That the defendant Detective John Gamble (Shield No. 2822) prepared a "Field Test Report"[1] dated July 13, 2011, wherein he alleged that at 06:30 a.m. on July 13, 2011, within the subject premises, he had observed the plaintiffs Earl Washington, Lorene Clark, Shaney Clark and Reginald Jackson in possession of "2

---

[1] A true copy of which is attached to this complaint. Personal information of each plaintiff, such as their date(s) of birth, have been redacted from said document.

ziplock bags of crack cocaine" which had been recovered "from bebroom (sic) #2 sneaker box".

49.     Defendant Detective John Gamble (Shield No. 2822) signed the above-referenced "Field Test Report" on July 13, 2011, and acknowledged that "false statements made herein are punishable as a class A misdemeanor pursuant to 240.45 of the Penal Law".

50.     That the defendant Sergeant John Costin[2] also signed the above-referenced "Field Test Report" on July 13, 2011, as the "Supervisor Assuring Accuracy in the preparation of this Field Test Report".

51.     The allegations that the defendants Detective John Gamble and Sergeant John Costin made in the above-referenced "Field Test Report" were completely untrue, false and contrived.

52.     That the defendant Detective John Gamble (Shield No. 2822) subsequently prepared a "Property Clerk Invoice" No. "R986304"[3] dated July 13, 2011, wherein he alleged that two ziplock bags of crack/cocaine were vouchered for the plaintiffs Earl Washington, Lorene Clark and Shaney Clark.

53.     That the defendant Sergeant John Costin also signed the above-referenced "Property Clerk Invoice" on July 13, 2011 in his capacity as a "Supervisor".

54.     The allegations that the defendants Detective John Gamble and Sergeant John Costin made in the above-referenced "Property Clerk Invoice" were completely untrue, false and contrived.

55.     That the plaintiff Earl Washington could not have been in possession of the illegal narcotics that the defendants John Gamble and John Costin allege he was, as set forth in the above-referenced and attached "Field Test Report" and "Property Clerk Invoice", for the simple reason that he was not even present in the subject premises at

---

[2] The defendant John Costin has been identified by the defendant City's attorneys as bearing the rank of Lieutenant. However, the "Field Test Report" indicates that he is a Sergeant.

[3] A true copy of which is attached to this complaint. Personal information of each plaintiff, such as their date(s) of birth, have been redacted from said document.

the time that the defendant officers claimed they recovered the purported illegal narcotics, after they gained entry to the subject premises in the early morning of July 13, 2012.

56. As such, it is clear that the defendants Detective John Gamble and Sergeant John Costin contrived and made up the allegations set forth in the above-referenced and attached "Field Test Report" and "Property Clerk Invoice".

57. That the defendants John Gamble and John Costin were aware that the allegations that they set forth against the plaintiffs in the above-referenced and attached "Field Test Report" and "Property Clerk Invoice" were completely false, untrue and contrived.

58. That the online "Arrest Report" that was prepared by defendant Darnay Harris[4] for plaintiff Earl Washington states that said plaintiff was arrested at "20:35:00" when he "turned himself in at the 77 Pct."

59. That the defendant Sergeant John Costin is indicated within said "Arrest Report" as the "Supervisor Approving" of same.

60. That the defendants completely fabricated evidence against the plaintiffs, and then forwarded said fabricated evidence to the Kings County District Attorney's office.

<u>CAUSE OF ACTION ON BEHALF OF THE PLAINTIFFS LORENE CLARK, SHANEY CLARK, REGINALD JACKSON AND EARL WASHINGTON: FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C § 1983/NEW YORK STATE LAW</u>

61. By this reference, each plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 60 of this complaint as though fully set forth herein.

62. The above-described respective arrest, detention and imprisonment of each plaintiff were without just or probable cause and without any warrant or legal process directing or authorizing said plaintiff's arrest or subsequent detention.

---

[4] A true copy of which is attached to this complaint. Personal information of the plaintiff Earl Washington, such as his date of birth and social security number, have been redacted from said document.

63.     As a result of each plaintiff's above-described false arrest and
        imprisonment, he/she has been caused to suffer humiliation, great
        mental and physical anguish, embarrassment and scorn among those
        who know him/her, was prevented from attending to his/her
        necessary affairs, and has been otherwise damaged in his/her
        character and reputation.

64.     Consequently, each plaintiff has been damaged and hereby demands
        compensatory and punitive damages in an amount to be proven at
        trial against each of the defendants, individually and severally.

65.     The defendant officers were at all material times acting within the
        scope of their employment, and as such, the defendant City is
        vicariously liable for the defendant officers acts as described above.

CAUSE OF ACTION ON BEHALF OF THE PLAINTIFFS
LORENE CLARK, SHANEY CLARK, REGINALD JACKSON
AND EARL WASHINGTON: FAILURE TO
INTERVENE/INTERCEDE UNDER 42 U.S.C § 1983

66.     By this reference, each plaintiff incorporates each and every
        allegation and averment set forth in paragraphs 1 through 65 of this
        complaint as though fully set forth herein.

67.     Each and every individual defendant had an affirmative duty to
        intervene on each plaintiff's behalf to prevent the violation to his/her
        constitutional rights, as more fully set forth above.

68.     The individual defendants failed to intervene on each plaintiff's
        behalf to prevent the violation of his/her constitutional rights, despite
        having had a realistic and reasonable opportunity to do so.

69.     As a consequence of said defendants' actions, each plaintiff suffered
        loss of liberty, humiliation, mental anguish, depression, and each
        plaintiff's constitutional rights were violated. Each plaintiff hereby
        demands compensatory damages and punitive damages, in an amount
        of to be determined at trial, against each of the defendants,
        individually and severally.

CAUSE OF ACTION ON BEHALF OF THE PLAINTIFFS
LORENE CLARK, SHANEY CLARK, REGINALD JACKSON
AND EARL WASHINGTON: DENIAL OF A CONSTITUTIONAL
RIGHT TO A FAIR TRIAL UNDER 42 U.S.C § 1983 DUE TO
THE FABRICATION OF EVIDENCE

70.     By this reference, each plaintiff incorporates each and every
        allegation and averment set forth in paragraphs 1 through 69 of this
        complaint as though fully set forth herein.

71.     The individual defendants created false evidence against the
        plaintiffs.

72.     The individual defendants forwarded false evidence and false
        information to the prosecutors in the Kings County District
        Attorney's office.

73.     That said defendants misrepresented and falsified evidence to the
        prosecutors in the Kings County District Attorney's office.

74.     That said defendants withheld exculpatory evidence from the
        prosecutors in the Kings County District Attorney's office.

75.     That said defendants did not make a complete statement of facts to
        the prosecutors in the Kings County District Attorney's office.

76.     By creating false evidence against the plaintiffs and forwarding false
        evidence and information to the prosecutors, the defendants violated
        each plaintiff's constitutional right to a fair trial under the Due
        Process Clause of the Fifth and Fourteenth Amendments to the
        United States Constitution.

77.     As a consequence of said defendants actions, each plaintiff suffered
        loss of liberty, humiliation, mental anguish, depression, loss of wages
        from work, and his constitutional rights were violated. Each plaintiff
        hereby demands compensatory damages and punitive damages, in an
        amount to be determined at trial, against each of the defendants,
        individually and severally.

CAUSE OF ACTION ON BEHALF OF THE PLAINTIFFS LORENE CLARK,
SHANEY CLARK, REGINALD JACKSON AND EARL WASHINGTON: FALSE

## ARREST, FALSE IMPRISONMENT AND UNLAWFUL SEARCH PURSUANT TO ARTICLE 1, SECTION 12, OF THE NEW YORK STATE CONSTITUTION

78.     By this reference, each plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 77 of this complaint as though fully set forth herein.

79.     The above-described respective arrest, search, detention and imprisonment of each plaintiff was without just or probable cause and without any warrant or legal process directing or authorizing said plaintiff's arrest or subsequent detention.

80.     As a result of each plaintiff's above-described false arrest, search, and imprisonment, he/she was caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him/her, was prevented from attending to his/her necessary affairs, and has been otherwise damaged in his/her character and reputation.

81.     Consequently, each plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

82.     The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

## CAUSE OF ACTION ON BEHALF OF THE PLAINTIFFS LORENE CLARK AND SHANEY CLARK: EXCESSIVE FORCE UNDER 42 U.S.C § 1983

83.     By this reference, the plaintiffs Lorene Clark and Shaney Clark incorporate each and every allegation and averment set forth in paragraphs 1 through 82 of this complaint as though fully set forth herein.

84.     The level of force employed by one or more of the defendant officers upon the plaintiffs Lorene Clark and Shaney Clark was objectively unreasonable, and in violation of the plaintiffs Lorene Clark and Shaney Clark respective constitutional rights.

85.     As a result of the aforementioned conduct of the defendants officers, the plaintiffs Lorene Clark and Shaney Clark were subjected to excessive force, resulting in physical injuries.

CAUSE OF ACTION: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

86.     By this reference, each plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 85 of this complaint as though fully set forth herein.

87.     The defendants arrested and incarcerated each plaintiff, in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest(s) and incarceration(s) would jeopardize each plaintiff's liberty, well-being, safety and constitutional rights.

88.     The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

89.     The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

90.     The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

a. Wrongfully arresting individuals on the pretext that they are/were involved in illegal transactions;

b. manufacturing evidence against individuals allegedly involved in illegal transactions;

c. unlawfully searching pre-arraignment detainees in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband; and

d. arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas).

91.     The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the numerous civil rights actions filed against the City of New York in the state and federal courts.

92.     The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

93.     Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court, in the case(s) of <u>Jose Colon v. City of New York</u>, et al (09-cv-8) and <u>Maximo Colon v. City of New York</u>, et al (09-cv-9), wherein the Court stated, *inter alia*, that "*Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department*", and that "*there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged*".

94.     The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to her by the Constitution of the United States:

(a)     The right of each plaintiff to be secure in his/her person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b )     The right of each plaintiff not to be deprived of life, liberty, or
property without due process of law, and the right to the equal protection
of the laws, secured to him/her by the Fifth and Fourteenth Amendments
to the Constitution of the United States.

(c)     The right to be free from unreasonable detention and/or continued
detention without probable cause in that each plaintiff was detained
without probable cause.

95.     As a result of the actions of the defendants, each plaintiff was
deprived of his/her rights, privileges, and immunities secured by the
United States Constitution, in particular, the Fourth, Fifth, and
Fourteenth Amendments, in contravention of 42 USC §1983 and the
laws of New York State, without just or legal cause when defendant
City, by its employees and/or agents unlawfully arrested and
imprisoned each plaintiff thereby depriving each plaintiff of his/her
liberty without due process of law.

96.     The defendant officers were the actual agents of the defendant City of
New York and were following the customs, practices, ordinances
and/or regulations of the City of New York when they violated the
plaintiffs constitutional and civil rights, and the City of New York is
therefore responsible for their acts, and liable to the plaintiffs for the
damages they suffered.

97.     The actual principal/agent relationship between defendant City and
the defendant officers was created by the fact they were employees of
defendant City, and the City had the right to, and it did indeed
regulate and control the activities and conduct of the defendant
officers.

98.     The defendants' actions were vicious, wicked, cold-hearted,
intentional, malicious, unwarranted and in violation of the law. The
individual defendants had full knowledge that the charges made
before the Court against the plaintiffs were false and untrue.

## CAUSE OF ACTION ON BEHALF OF THE PLAINTIFFS LORENE CLARK AND SHANEY CLARK: ASSAULT AND BATTERY

99.     The plaintiffs Lorene Clark and Shaney Clark repeat and reallege paragraphs 1 through 98 as if each paragraph is repeated verbatim herein.

100.    At the time of the plaintiffs Lorene Clark and Shaney Clark arrest(s) by defendant police officers, the plaintiffs Lorene Clark and Shaney Clark did not challenge nor resist the defendant police officers, nor engage in any threatening behavior towards said defendant police officers.

101.    However, the defendant officers assaulted the plaintiffs Lorene Clark and Shaney Clark, battered the plaintiffs Lorene Clark and Shaney Clark, and subjected the plaintiffs Lorene Clark and Shaney Clark to excessive force and summary punishment

102.    The defendant police officers were at all material times acting within the scope of their employment.

103.    Consequently, the plaintiffs Lorene Clark and Shaney Clark have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

104.    This action, upon information and belief, falls within one or more of the exceptions of CPLR 1602.

## CAUSE OF ACTION ON BEHALF OF THE PLAINTIFFS LORENE CLARK AND SHANEY CLARK: NEGLIGENCE

105.    The plaintiffs Lorene Clark and Shaney Clark repeat and reallege paragraphs 1 through 104 as if each paragraph is repeated verbatim herein.

106.    As a direct and proximate result of the negligent acts of the defendants as set forth herein, plaintiffs Lorene Clark and Shaney

Clark suffered physical injury, conscious pain and suffering, medical expenses, lost wages, and severe mental anguish.

107.    That by reason of the said negligence, plaintiffs Lorene Clark and Shaney Clark suffered and still suffers bodily injuries, became sick, sore, lame and disabled and have remained sick, sore, lame and disabled since the aforesaid incident; have suffered great pain, agony and mental anguish and are informed and verily believe that they will continue to suffer for a long time to come and that said injuries are permanent; have suffered economic loss inasmuch as they were compelled to, and are still compelled to expend sums of money on medical treatment; that they were deprived of their pursuits and interests and verily believe that in the future they will continue to be deprived of such pursuits; and that said injuries are permanent.

108.    This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

WHEREFORE, each plaintiff respectfully prays for judgment as follows:

1.    For compensatory damages against each and all defendants in an amount to be proven at trial;

2.    For exemplary and punitive damages against each and all defendants in an amount to be proven at trial;

3.    For costs of suit herein, including each plaintiff's reasonable attorney's fees; and;

4.    For such other and further relief as the court deems proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, each plaintiff demands a trial by jury.

Dated: Brooklyn, New York
    April 13, 2012

LAW OFFICES OF WALE MOSAKU, P.C.

By:       /s/

Wale Mosaku (AM5872)

Attorney(s) for the Plaintiff
25 Bond Street, 3rd Floor
Brooklyn, N.Y. 11201
(718) 243-0994

Ryan Shaffer, Esq.
Assistant Corporation Counsel
City of New York Law Department
Attorney(s) for Defendant
The City of New York
100 Church Street
New York, N.Y. 10007
(212) 788-1041

Detective John Gamble (Shield No. 2822)
Defendant Pro Se
Brooklyn North Narcotics Division
1 Police Plaza, Room 1100
New York, New York 10007

Detective Darnay Harris (Shield No. 6193)
Defendant Pro Se
Brooklyn North Narcotics Division
1 Police Plaza, Room 1100
New York, New York 10007

Detective Jeanbern Remy (Shield No. 12574)
Defendant Pro Se
Brooklyn North Narcotics Division
1 Police Plaza, Room 1100
New York, New York 10007

Detective Andrew Prendergast (Shield No. 6395)
Defendant Pro Se
Brooklyn North Narcotics Division
1 Police Plaza, Room 1100
New York, New York 10007

Detective Kirk Fernandes (Shield No. 2531)
Defendant Pro Se
Brooklyn North Narcotics Division
1 Police Plaza, Room 1100
New York, New York 10007

Detective James Rivera (Shield No. 5027)
Defendant Pro Se
Brooklyn North Narcotics Division

1 Police Plaza, Room 1100
New York, New York 10007

Detective Ian Cyrus (Shield No. 2768)
Defendant Pro Se
Brooklyn North Narcotics Division
1 Police Plaza, Room 1100
New York, New York 10007

Detective James Ellerbe (Shield No. 29098)
Defendant Pro Se
Brooklyn North Narcotics Division
1 Police Plaza, Room 1100
New York, New York 10007

Captain Gregory Stewart
Defendant Pro Se
Brooklyn North Narcotics Division
1 Police Plaza, Room 1100
New York, New York 10007

Sergeant John Costin (Tax Reg. No. 903693)
Defendant Pro Se
79th Police Precinct
263 Tompkins Avenue
Brooklyn, New York 11216

**FIELD TEST REPORT**
**BROOKLYN**
PD 321-142 (Rev 05-08)

TO BE USED IN BROOKLYN ONLY

**I** A. FIELD TEST RESULTS: ☒ Positive ☐ Negative

B. Voucher No. R986304

C. List All Prisoners:

| | Last Name | First Name | Date of Arrest | Date of Birth |
|---|---|---|---|---|
| (1) | WASHINGTON | EARL | | |
| (2) | CLARK | LORENE | 07/13/2011 | |
| (3) | CLARK | SHANEY | 07/13/2011 | |
| (4) | JACKSON-CLARK | REGINALD | 07/13/2011 | |
| (5) | N/A | | | |

D. Were there any other narcotics seized or purchased that are associated with this voucher number?
If yes, list all companion narcotics voucher numbers or write N/A if there are none.

N/A    N/A    N/A

N/A    N/A    N/A

**2** A. Testing Officers Name Printed (If Undercover - List Shield Number In Lieu of Name)

DET GAMBLE

B. Command NBBN | C. Tax No. 915764 | D. Officer performing test has conducted 20 or more field tests.

E. Arresting Officers Name (Print)

DET GAMBLE

F. Command NBBN | G. Tax No. 915764

☒ Check Here If Same As Testing Officer

**3** A. Contents in this envelope was purchased by an undercover: ☐ Yes ☒ No

**4** A. Contents in this envelope is narcotics recovered other than that purchased by an undercover: ☒ Yes ☐ No

**5** A. Drug Type/Field Test

☐ Heroin/Meckes Reagent

☒ Cocaine/Cocaine Salts and Base Reagent

☐ Marijuana/Duquenois - Levine Reagent

B. Quantity Vouchered and Type of Container: (Number and Description)
2 ZIPLOCK BAGS OF CRACK COCAINE

C. Date Field Test Conducted 07/13/2011

D. Estimated total weight of narcotics vouchered greater than 1/8 oz. ☐ Yes ☒ No

**6** A. Contents in this envelope was seized during the execution of a search warrant: ☒ Yes ☐ No

**7** (Check all applicable boxes and fill in all blanks)
0630

A. ☒ On 07/13/2011 at 654 KINGSBOROUGH 6 WALK APT 6C _____ Kings County, I observed the

prisoner in possession of 2 of ZIPLOCK BAGS OF CRACK COCAINE

recovered from FROM BEDROOM #2 SNEAKER BOX

B. ☒ I have had professional training as a police officer in the identification of the above recovered substance/drugs.

☒ I have previously made arrests for criminal possession of the above recovered substance/drugs.

☒ I have previously seized CRACK COCAINE which was determined to be such by the police department laboratory, and the substance in this case possess the same physical characteristics as such previously identified substance or drugs.

☒ By my professional training and experience as a police officer, I am familiar with the common methods of packaging

CRACK COCAINE and the PLASTIC ZIPLOCK BAGS used to package the substance/drugs in this case is commonly used method of packaging such substance/drugs.

C. Based upon the foregoing, the substance/drugs possessed by the prisoner is CRACK COCAINE

**8** CERTIFICATION - I hereby acknowledge the above statement and I tested the above substance / drugs and this report is a true and full copy of the original report made by me. False statements made herein are punishable as a class A misdemeanor pursuant to 210.45 of the Penal Law.

Testing Officers Signature: _____ Date 07/13/2011

**9** Supervisor Assuring Accuracy in the Preparation of this Field Test Report:

| RANK | NAME | SIGNATURE | TAX NUMBER | COMMAND |
|---|---|---|---|---|
| SGT | COSTIN | | 903693 | NBBN |

NYC25

**PROPERTY CLERK INVOICE**
PD 521-141 (Rev. 11-09)

**R986304**

☐ ARREST EVIDENCE  ☐ DNA ARREST EVIDENCE  ☐ FORFEITURE  ☐ FOUND PROPERTY  ☐ PEDDLER PROPERTY
☐ INVESTIGATORY  ☐ DNA INVESTIGATORY  ☐ DECEDENT'S PROPERTY  ☐ SAFEKEEPING  ☐ OTHER:

| Invoicing Officer Rank/Name | Tax No. | Command | Invoice Date | Invoicing Command |
|---|---|---|---|---|
| DET. ULLOA | 927617 | KEBN | 07/13/11 | 0??? |
| Arresting Officer Rank/Name | Tax No. | Command | Complaint No. (Yr.-Pct.-No.) | Aided/Accident No |
| DET. GAMBLE | 915764 | KEBN | 070405 | NA |
| Investigating Officer Rank/Name | Tax No. | Command | Related Comp. No. (Yr.-Pct.-No.) | OCME/EU No. |
| NA | NA | NA | NA | NA |
| Detective Squad Supervisor Rank/Name | Tax No. | Command | Del Squad Case No. | OCME FB No. |
| NA | NA | NA | NA | NA |
| CSU/ECT Processing Officer Rank/Name | Tax No. | Command | Police Lab Evid. Control No. | CSU/ECT Run No. |
| NA | NA | NA | NA | NA |

| ☐ Arrest  Date | Charge/Offense Under Investigation | | | | | | | | | |
| ☐ Incident 07/13/11 | 220.16 | | | | | | | | | |

| Finder of Property | Address (Include City, State, Zip, Apt.) | Telephone No. |
|---|---|---|
| DET. GAMBLE | 1 PP | NA |
| Owner of Property (See Instructions) | Address (Include City, State, Zip, Apt.) | Telephone No. |
| EARL WASHINGTON | 654 KINGSBORO 6 WALK  6C | NA |
| Complainant Last Name, First Name | Address (Include City, State, Zip, Apt.) | Telephone No. |
| PSNY | 1 PP | NA |
| Prisoner's Last Name, First Name  M.I. | D.O.B.  Address (Include City, State, Zip, Apt.) | Arrest No. |
| 1. EARL WASHINGTON | 654 KINGSBORO 6 WALK 6C | NA |

Additional Invoice Nos. Related to This Case Including Vehicles

| ITEM No. | QTY | ARTICLE | CASH VALUE USC only | PEDDLER/LEAD SEAL No. | SEC/NARCO ENVELOPE No. |
|---|---|---|---|---|---|
| 1 | 1 | ZIP LOCK BAG OF CRACK/COCAINE (FTP) | | | 1200389389 H958355 |
| 2 | 1 | ZIPLOCK OF CRACK/COCAINE | | | |
| | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | | | | |
| | ABOVE IS A COMPLETE LIST OF PROPERTY VOUCHERED | | | | |

| MEI No. | | | TOTAL CASH VALUE | | Pink Receipt Issued ☐ Yes ☐ Refused |
|---|---|---|---|---|---|

| Additional Prisoner's Last Name, First Name, M.I./D.O.B. | Address (Include City, State, Zip, Apt.) | Arrest No. |
|---|---|---|
| 2. CLARK, LORENE | 654 KINGSBORO 6 WALK 6C | |
| 3. CLARK, SHANEY | 654 KINGSBORO 6 WALK 6C | |

| Prisoner 1 NYSID No. | Prisoner 2 NYSID No. | Prisoner 3 NYSID No. | Total No. of Prisoners |
|---|---|---|---|

REMARKS: Briefly explain why the property was taken into custody (see Instructions on BACK of this form).

AT TPO THE ABOVE IS VOUCHERED FOR ARREST EVIDENCE.

| Invoicing Officer Rank/Name (Printed) | Signature | Tax No. | Command | PCD Storage Facility |
|---|---|---|---|---|
| DET. ULLOA | | 927617 | KEBN | |
| Supervisor Rank/Name (Printed) | Signature | Tax No. | Command | PCD Location (Shelf No.) |
| SGT. COSTIN | | 903693 | KEBN | |
| MOS Delivering to PCD Rank/Name (Printed) | Signature | Tax No. | Command | PCD Storage No. |
| PCD Receiving MOS Rank/Name (Printed or Stamped) | Tax No. | Command | REGS. No. | |
| Owner/Claimant Name | | Signature & Date Property Returned to Owner | | |
| | | X | | |

**R986304**

NYC29



# New York City Police Department
## Omniform System - Arrests



| RECORD STATUS: NYSID ENTERD | Arrest ID: K11667980 - H |
|---|---|
| **Arrest Location: INSIDE OF 127 UTICA AVENUE** | Pct: 077 |

**Arrest Date: 07-13-2011**   Processing Type: **ON LINE**

**Time: 20:35:00**   DCJS Fax Number: **KO045530**

Sector: **J**   Special Event Code: **-**

DAT Number: **0**

Stop And Frisk: **NO**   Return Date: **0000-00-00**

Serial #: **0000-000-00000**

## ARREST DATA - COMPLAINT NOT REQUIRED

Jurisdiction: **NYPD**                     *NYC School Safety Data:  NYC Transit Data:*

Premises: **RESIDENCE - PUBLIC HOUSING**   On School Property:        Station:

Location Within: **APARTMENT**                 School Type:        Line #:

Occur.Date/Time: **2011-07-13 - 06:05**        School Num:   Location:

*NYC Housing Development:*                       School Name:

Offense Location: INSIDE OF 654 KINGSBOROUGH 6 WALK APT: 6C  Borough: BROOKLYN

| CHARGES: | | | | | | Arrest #: K11667980 |
|---|---|---|---|---|---|---|

| CHARGE | ATTEMPT? | LAW CODE | CLASS | TYPE | COUNTS | DESCRIPTION |
|---|---|---|---|---|---|---|
| TOP | No | PL 220.16 01 F | B | | 1 | CPCS-3RD:NARC DRUG INT/SELL |

| DWI Arrest from: | # Injured: 00 | # Fatalities: 00 | Test Given: | B.A.C: | Reason Not Forfeit: |
|---|---|---|---|---|---|

| DETAILS: | Arrest #: K11667980 |
|---|---|

AT T/P/O DEFT WAS WANTED AS A SUBJECT ON SERACH WARRANT# 370/2011. DEFT TURNED HIMSELF IN AT THE 77 PCT. DEFT HAS A TATTOO WITH THE INITIALS OF "SW" IN HIS RIGHT FINGER.

| DEFENDANT: WASHINGTON, EARL | NYSID #: 01035385L | Arrest #: K11667980 |
|---|---|---|

Nick/AKA/Maiden: **EASY**           Height: **5FT 11IN**        Order Of Protection: **NO**

Sex: **MALE**             Weight: **170**          Issuing Court:

Race: **BLACK**           Eye Color: **BROWN**         Docket #:

Age: **26**            Hair Color: **BLACK**        Expiration Date:

Date Of Birth:          Hair Length: **SHORT**    Relation to Victim: **STRANGER**

U.S. Citizen: **YES**         Hair Style: **CLOSE CUT**      Living together: **NO**

Place Of Birth: **USA**        Skin Tone: **DARK**         Can be Identified: **NO**

Need Interpreter: **NO**       Complexion: **CLEAR**

Language:

Accent: **NO**           Soc.Security #:

Occupation: **NONE**       Gang Affiliation: **NO**

Physical Condition: **APPARENTLY NORMAL** Lic/Permit Type:        Name:

Drug Used: **CRACK**         Lic/Permit No:         Identifiers:

| LOCATION | ADDRESS | CITY | STATE/CNTRY ZIP | APT/ROOM | PCT |
|---|---|---|---|---|---|
| HOME-PERMANENT 736 MACON STREET BROOKLYN NEW YORK | | | 2 | | 081 |

Phone # and E-Mail Address: HOME: 718-350-3531

N.Y.C.H.A. Resident: **NO** N.Y.C. Housing Employee:  On Duty:

| Development: | N.Y.C. Transit Employee: |
|---|---|

**Physical Force:NONE**

Gun:
Weapon Used/Possessed: NONE          Make:          Recovered:
Non-Firearm Weapon:                  Color:    Serial Number Defaced:
Other Weapon Description:            Caliber:       Serial Number:
                                      Type:
                              Discharged: NO

Used Transit System: NO
Station Entered:
Time Entered:
Metro Card Type:
Metro Card Used/Poses:
Card #:

| CRIME DATA | DETAILS |
|---|---|
| MODUS OPERANDI | UNKNOWN |
| ACTIONS TOWARD VICTIM | UNK |
| CLOTHING | HEADGEAR - BASEBALL HAT - BLUE |
| CLOTHING | ACCESSORIES - SWEAT / JOGGING CLOTHES - BLUE |
| CLOTHING | FOOTWEAR - SNEAKERS - BLUE |
| CLOTHING | OUTERWEAR - T-SHIRT OR TANK TOP - WHITE |
| CHARACTERISTICS | UNKNOWN |
| BODY MARKS | ARM -TATOO WITH WORDS ONLY - DESCRIBE:SIRIYAN |
| BODY MARKS | ARM -TATOO WITH WORDS ONLY - DESCRIBE:PRAYING HANDS |
| IMPERSONATION | UNKNOWN |

**JUVENILE DATA:**                                        Arrest #: K11667980

Juvenile Offender:  Relative Notified:  Personal Recog:
Number Of Priors: 0       Name:
School Attending:   Phone Called:
Mother's Maiden Name:   Time Notified:

**ASSOCIATED ARRESTS:**                                   Arrest #: K11667980

ARREST ID COMPLAINT #

**DEFENDANTS CALLS:**                                     Arrest #: K11667980

CALL # NUMBER DIALED NAME CALLED
1      - -          REFUSED

**INVOICES:**                                             Arrest #: K11667980

INVOICE# COMMAND PROPERTY TYPE VALUE

**ARRESTING OFFICER: DT3 DARNAY HARRIS**                  Arrest #: K11667980

Tax Number: 922482          On Duty: YES              Force Used: NO
Other ID (non-NYPD): 922482     In Uniform: NO            Type:
Shield: 6193                Squad: 77                Reason:
Department: NYPD            Chart: 97             Officer Injured: NO
Command: 547     Primary Assignment:

| Assigned Officer: CARR, JAMEL | | Department: NYPD | Command: 547 | Tax Number: | Other ID (non-NYPD): 934583 |
|---|---|---|---|---|---|

| Arresting Officer Name:<br>DT3 HARRIS, DARNAY | Tax #:<br>922482 | Command:<br>547 | Agency:<br>NYPD |
|---|---|---|---|
| Supervisor Approving:<br>SGT COSTIN JOHN | Tax #:<br>903693 | Command:<br>547 | Agency:<br>NYPD |

ARREST Report - K11667980

| Report Entered by:<br>DT3 LALLAVE, SAMUEL | Tax #:<br>894731 | Command:<br>547 | Agency:<br>NYPD |
|---|---|---|---|



# END OF ARREST REPORT
# K11667980



Print this Report